**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-01561-NYW

HIGH IMPACT, LLC,

      Plaintiff,

v.

STATE FARM FIRE & CASUALTY COMPANY,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

This matter comes before the court on the following motions:

(1)      Defendant State Farm Fire and Casualty Company's ("Defendant" or "State Farm") Motion for Summary Judgment, filed February 24, 2020, [#41];

(2)      Plaintiff High Impact, LLC's ("Plaintiff" or "High Impact") Motion *in the Alternative* for an Extension of Time (the "Rule 56(d) Motion"), filed March 16, 2020, [#43];

(3)      State Farm's Motion to Supplement Record on Summary Judgment (the "Motion to Supplement"), filed March 30, 2020, [#47];

(4)      State Farm's Motion to Strike Garrett Kurtt Affidavits, filed March 30, 2020, [#50]; and

(5)      State Farm's Motion to Strike Inadmissible Email from Record on Summary Judgment (the "Motion to Strike Email"), filed March 30, 2020, [#51].

The undersigned considers these Motions pursuant to 28 U.S.C. § 636(c) and the Order Referring Case for all purposes.  The court concludes oral argument will not materially assist in

the disposition of these matters.  Accordingly, upon review of the Motions and associated briefing, the applicable case law, and the record before the court, the court **DENIES** the Motion for Summary Judgment; **DENIES as moot** the Rule 56(d) Motion; and **DENIES** the Motion to Supplement, the Motion to Strike Garrett Kurtt Affidavits, and the Motion to Strike Email.

## MATERIAL FACTS

The court draws the following material facts from the record before it.  These material facts are relevant to the narrow issue asserted in State Farm's Motion for Summary Judgment, i.e., whether High Impact may assert a first-party statutory bad faith claim against State Farm, and they are undisputed unless otherwise noted.

1.      State Farm issued Policy No. 96-CFC345-0 (the "Policy") to its insureds, non-parties Edward Lee and Kim Soon Lee (collectively, "the Lees").  *See* [#41-1 at ¶ 5].[1]

2.      The Policy insured the Lees' property located at 5105 West Alameda Avenue, Denver, CO 80219.  *See* [*id.* at ¶ 3].

3.      The Lees' property sustained damages due to a hailstorm on or about May 8, 2017.  [*Id.* at ¶ 4].

4.      At some point, the Lees filed a claim with State Farm to cover the placement costs of the damage.  [#41-3]; *see also* [#19-2 at ¶ 12].

---

[1] High Impact challenges the veracity of Edward Lee's Affidavit submitted in support of State Farm's Motion for Summary Judgment, including through the competing Affidavit of High Impact's sole member Garrett Kurtt [#42-1] and High Impact's Rule 56(d) Motion [#43].  This has led to State Farm's three additional motions challenging the admissibility of High Impact's proffered evidence in support of its Response to the Motion for Summary Judgment.  *See, e.g.*, [#47; #50: #51].  These disputes, however, are irrelevant to the court's consideration of the Motion for Summary Judgment.  In citing Mr. Lee's Affidavit, the court cites only those portions that the Parties cannot reasonably dispute.

5.       At some point after the Lees submitted their insurance claim, they hired High

Impact, a roofing and construction company whose sole member is owner Garrett Kurtt ("Mr.

Kurrtt), *see* [#41-2 at 36:11-23[2]], as a consultant to the their initial contractor, but later hired High

Impact as their general contractor, *see* [#42-1 at ¶¶ 1-2; #42-2].[3]

6.       The Construction Services contract entered between High Impact and Edward Lee,

which Mr. Kurtt and Mr. Lee signed, states, in pertinent part,

> **2. INSURANCE.**   If the work is to be funded from insurance proceeds, the
> following shall apply:
> **2(a). Communication.**   You authorize High Impact to contact and negotiate with
> your insurance company to determine the causation, scope of work, Replacement
> Cost Value, Supplements, and all other issues related to the work.   You instruct
> your insurance company to cooperate with High Impact, and agree that you and the
> insurer shall cooperate fully and in good faith with High Impact.   You also authorize
> your insurance company to include High Impact LLC in addition to your name on
> all checks for all work performed under this contract.   Supplements: The scope of
> work may need to be expanded after work begins and when it becomes apparent
> that actual damage is more extensive than could be determined initially.   At no
> additional cost to you, High Impact reserves the right to submit supplemental
> payment request(s) to your insurance company due to differences in the scope of
> work or an increase in costs. . . .

[#42-2 at 2].

7.       The Construction Services contract was executed on or about May 25, 2018 and

Plaintiff was obligated to perform a certain scope of work to repair the Lees' roof.  [*Id.* at 1].

8.       Disputes then arose between High Impact's estimates of the value of the damage to

the Lees' property and State Farm's estimates.  *See* [#42-1 at ¶¶ 9, 13-16; #42-4].

---

[2] When citing to a transcript, the court cites to the document number generated by the Electronic
Court Filing ("ECF") system and the page and line numbers generated by the transcript.

[3] State Farm moves to strike Mr. Kurtt's Affidavit [#42-2] for several reasons that are immaterial
to the court's consideration of the Motion for Summary Judgment.  *E.g.*, [#50].  As with Mr. Lee's
Affidavit, the court cites to only those portions that the Parties cannot reasonably dispute.  Further,
State Farm seeks leave to supplement the record with an "altered version" of the general contractor
contract between High Impact and the Lees, *see* [#47 at 2; #47-5], but the "altered version" of the
contract does not affect the court's analysis.

9.      On or about July 20, 2018, while the adjustment of the Lees' claim was ongoing,

High Impact and the Lees signed a document titled Assignment and Assumption of Insurance

Claims (the "Assignment Agreement").  *See* [#41-3; #42-3].

10.     The Assignment Agreement states that the Lees, identified as the "Property

Owners," "hereby sells, transfers, assigns and conveys all first party rights to **High Impact, LLC**,"

identified as "HPACT," and further reads:

**AGREEMENT**

Property Owners and High Impact wish to enter into this assignment for the
Property Owner's first party property claim for covered losses that occurred on May
8, 2017;

Property Owner has a claim for damage to the insured property at 5150 W Alameda
Ave, Denver, CO 80219 as listed on the declarations page of the policy of
insurance. Property Owner policy with State Farm Fire and Casualty Company,
policy number 96-CF-C345-0 with a loss date of May 8, 2017;

Property Owner's claim is for Hail damage to the property referenced above with a
State Farm claim number of 06-2664-D16

Property Owner wishes to assign the benefits and right of payment from the
proceeds of all claims against State Farm Fire and Casualty Company arising out
of hail damage sustained by the insured property May 8, 2017 to HPACT;

HPACT has agreed to pay the costs of reasonable repairs of the damage to the
insured property or replacement of the damaged insured property caused by the
hailstorm that occurred on May 8, 2017;

HPACT will carry the cost of the all fees and expenses associated with the
settlement of the claim;

Property Owner will not be liable for any costs or expenses associated with the
negotiation, appraisal if HPACT is unsuccessful in its effort to have State Farm Fire
and Casualty Company pay the balance invoiced by HPACT;

Property Owner agrees to fully cooperate with HPACT, provide access to the
property and all necessary information and/or documentation related to the
insurance claim, and perform any requests made by HPACT to successfully
advance the insurance claim through all stages of settlement until resolution[.]

[#41-3; #42-3].

11.      In or about August 2018, State Farm valued the claim at $375,856.43—an amount

closer to High Impact's estimate—and State Farm paid this amount to the Lees to repair their roof.

*See* [#42-1 at ¶¶ 9, 19; #42-5].

12.      Believing State Farm unreasonably delayed payment of the benefits owed under the

Policy, High Impact initiated this civil lawsuit in the District Court for the City and County of

Denver on or about May 6, 2019, *see* [#1; #4], and Defendant removed this matter to this District

pursuant to 28 U.S.C. § 1332 on May 31, 2019, *see* [#1].

13.      Pursuant to the operative Second Amended Complaint, Plaintiff asserts a single

claim for relief against State Farm for the unreasonable delay in providing benefits owed under

the Policy in violation of Colo. Rev. Stat. §§ 10-3-1115, -1116 ("statutory bad faith"), and requests

two-times the covered benefit.  *See* [#19-2].

## LEGAL STANDARD

Pursuant to Rule 56, summary judgment is warranted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier

of fact could resolve the issue either way.  A fact is material if under the substantive law it is

essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189,

1194 (10th Cir. 2011) (internal citations and quotation marks omitted).  It is the movant's burden

to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant

must set forth specific facts establishing a genuine issue for trial.  *See Nahno-Lopez v. Houser*, 625

F.3d 1279, 1283 (10th Cir. 2010).  At all times, the court will "view the factual record and draw

all reasonable inferences therefrom most favorably to the nonmovant." *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016).

To satisfy its burden at summary judgment the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient. *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998) (explaining that the nonmovant cannot rely on "mere reargument of his case or a denial of an opponent's allegation" to defeat summary judgment). In considering the parties' evidence, the court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). Further, the court may consider only admissible evidence, *see Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995), though the evidence need not be in a <u>form</u> that is admissible at trial, only the <u>substance</u> must be admissible at trial, *see Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016). Indeed, "[t]o determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury." *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

## ANALYSIS

### I.    Motion for Summary Judgment

On February 24, 2020, State Farm filed its Motion for Summary Judgment. [#41]. It argues High Impact's statutory bad faith claim fails as a matter of law because High Impact does not sue State Farm "on behalf of" the Lees and therefore cannot maintain a first-party statutory bad faith claim against State Farm. *See generally* [*id.*]. State Farm also seeks attorneys' fees pursuant to

6

Colo. Rev. Stat. § 10-3-1116(5), arguing High Impact's statutory bad faith claim is frivolous. [*Id.*].

High Impact opposes the Motion for Summary Judgment, arguing it is a proper first-party Plaintiff

based on the Lees' assignment of their insurance claim to High Impact. *See* [#42]. In the

alternative, Plaintiff requests further discovery limited to Edward Lees' Affidavit submitted in

support of State Farm's Motion for Summary Judgment. *See* [#43]. State Farm has also submitted

three motions concerning the summary judgment record before the court. *See* [#47; #50; #51].

The Motions are all ripe for disposition.

At bottom, the Parties dispute centers on whether High Impact may maintain a suit against

State Farm, which revolves around the court's interpretation of the Assignment Agreement

between High Impact and the Lees. Because the court concludes the Assignment Agreement is

unambiguous, it need not consider the Parties' extrinsic evidence regarding the Lees' or High

Impact's intent in entering the Assignment Agreement. Accordingly, the court **DENIES as moot**

Plaintiff's Rule 56(d) Motion and **DENIES** State Farm's Motion to Supplement, Motion to Strike

Garrett Kurtt Affidavits, and Motion to Strike Email. For the following reasons, I also **DENY** the

Motion for Summary Judgment.

### A.     Colo. Rev. Stat. §§ 10-3-1115, -1116 - Statutory Bad Faith

Pursuant to Colorado statute, "A person engaged in the business of insurance shall not

unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party

claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). An insurer unreasonably delays or denies payment

if the insurer does so "without a reasonable basis for that action." *Id.* § 10-3-1115(1)(b)(2); *see*

*also Sandoval v. Unum Life Ins. Co. of Am.*, 952 F.3d 1233, 1236 (10th Cir. 2020) (explaining that

a showing of unreasonableness does not require "knowing or reckless conduct"). The

reasonableness of an insurer's conduct "is determined objectively under industry standards."

*Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F.3d 887, 890 (10th Cir. 2016).  "[I]f an insured can satisfy the elements [of a statutory bad faith claim], they are entitled to . . . an award of attorney fees and court costs, and two times the covered benefit."  *Guarantee Tr. Life Ins. Co. v. Estate of Casper by & through Casper*, 418 P.3d 1163, 1172 (Colo. 2018) (discussing recovery under Colo. Rev. Stat. § 10-3-1116(1) for violation of Colo. Rev. Stat. § 10-3-1115).

Relevant here, "[f]irst-party bad faith occurs when an insurance company delays or refuses to make payments owed directly to its insured under a first-party policy such as life, health, disability, property, fire, or no-fault auto insurance."  *Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116, 119 (Colo. 2010) (quoting *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414 (Colo. 2004)).  For purposes of statutory bad faith claims, "'First-party claimant' means an individual, corporation, association, partnership, or other legal entity asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy."  Colo. Rev. Stat. Ann. § 10-3-1115(1)(b)(I). In interpreting this definition, a division of the Colorado Court of Appeals held, "The disjunctive 'or' further indicates that the party asserting a claim for policy benefits may be a party other than the insured, so long as that party does so 'on behalf of an insured,'" which means "'in the interest of; as the representative of; for the benefit of'" the insured.  *Kyle W. Larson Enterprises, Inc. v. Allstate Ins. Co. ("Larson")*, 305 P.3d 409, 412 (Colo. App. 2012) (quoting Colo. Rev. Stat. § 10-3-1115(1)(b)(I); *Webster's Third New International Dictionary* 198 (2002)).

State Farm argues High Impact is not a "first-party claimant" because it does not sue "on behalf of" the Lees or seek "an entitlement to benefits owed directly to" the Lees.  According to State Farm, because the Lees will not benefit from this lawsuit and did not wish to sue State Farm themselves, High Impact is not authorized to sue State Farm.  For the following reasons, I respectfully disagree.

8

Because the core of the Parties' dispute revolves around the rights granted High Impact under the Construction Services contract and Assignment Agreement, the court must first interpret those documents. In interpreting contracts, the court aims to "discern and effectuate the parties' intent." *Sch. Dist. No. 1 in Cty. of Denver v. Denver Classroom Teachers Ass'n*, 433 P.3d 38, 41 (Colo. 2019).[4] To do so, the court "should give effect to the plain and generally accepted meaning of the contractual language, while also examining the entire instrument without viewing clauses or phrases in isolation." *Platt v. Winnebago Indus., Inc.*, --- F.3d ----, ----, 2020 WL 2893227, at *3 (10th Cir. June 3, 2020) (brackets omitted) (quoting *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009)). If "a written contract is complete and free from ambiguity, [the court] will deem it to express the intent of the parties, and [the court] will enforce it according to its plain language." *In re United W. Bancorp, Inc.*, --- F.3d ----, ----, 2020 WL 2702425, at *2 (10th Cir. May 26, 2020) (quoting *Klun v. Klun*, 442 P.3d 88, 92 (Colo. 2019)). Indeed, the court "<u>must</u> enforce an unambiguous contract in accordance with the plain and ordinary meaning of its terms." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1273 (10th Cir. 2018) (emphasis added) (quoting *USI Props. East, Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997)).

There is no dispute that High Impact and the Lees entered into the Construction Services contract and Assignment Agreement, and State Farm makes no argument that either document is invalid. The Construction Services contract covers High Impact's repairs of the Lees' property and reads, in pertinent part,

> You [the Lees] authorize High Impact to contact and negotiate with your insurance company to determine the causation, scope of work, Replacement Cost Value, Supplements, and all other issues related to the work. . . .   You also authorize your

---

[4] "Because this is a diversity action, [the court] appl[ies] the substantive law of Colorado to the legal questions at issue in this case." *Patterson v. PowderMonarch, LLC*, 926 F.3d 633, 637 (10th Cir. 2019).

> insurance company to include High Impact LLC in addition to your name on all
> checks for all work performed under this contract.

[#42-2 at 2].  The Construction Services contract unambiguously confers the right on High Impact

to contact and negotiate with State Farm regarding the repair of the Lees' property.  The

Assignment Agreement also unambiguously "sells, transfers, assigns and conveys all [the Lees']

first party rights to High Impact, LLC."  [#41-3 at 1 (emphasis omitted)].  The Assignment

Agreement also speaks in no uncertain terms as to the Lees' and High Impact's intent:

> [The Lees] and [High Impact] wish to enter into this assignment for the [the Lees']
> first party property claim for covered losses that occurred on May 8, 2017 . . . [and]
> [the Lees] wish[] to assign the benefits and right of payment from the proceeds of
> all claims against [State Farm] arising out of hail damage sustained by the insured
> property May 8, 2017 to [High Impact][.]

[#41-3].

State Farm contends High Impact cannot maintain its statutory bad faith claim against State

Farm.  State Farm offers three reasons why this is so.  Respectfully, the court finds none persuasive.

By giving the Assignment Agreement its plain and ordinary meaning, as it must, the court

concludes that the Lees assigned to High Impact all "benefits and right of payment from the

proceeds of all claims" arising from the hail damages sustained to the Lees' property, including

the statutory bad faith claim asserted in this action.

*First*, State Farm argues that High Impact cannot demonstrate it sues "on behalf of" the

Lees, because the Lees have no interest in and will receive no benefit from this suit and High

Impact does not purport to sue as the Lees' representative.  [#41 at 4; #48 at 6-8].  State Farm's

argument misses the mark, however.

There is no dispute that the Lees agreed to pay High Impact for its repairs from the

insurance proceeds paid by State Farm and granted High Impact the absolute right to contact and

negotiate the necessary repairs with State Farm.  *See* [#42-2].  There is also no dispute that High

10

Impact sought payment from State Farm.  In *Larson*, a division of the Colorado Court of Appeals held that under such circumstances a repair vendor was a "first-party claimant" because, where "the arrangement relieved the insureds of any obligation to assert the claims themselves, the repair vendor's "assertion of claims against [the insurer] for payment for such repair work was necessarily made 'on behalf of' the insured[.]" *Larson*, 305 P.3d at 412.  The same is true here.

Moreover, the Lees unambiguously assigned their first-party rights under the insurance claim to High Impact.  *See* [#41-3].  In doing so, High Impact as assignee "stands in the shoes of the assignor," *Dean Witter Reynolds Inc. v. Variable Annuity Life Ins. Co.*, 373 F.3d 1100, 1110 (10th Cir. 2004) (citing *Tivoli Ventures, Inc. v. Bumann*, 870 P.2d 1244, 1248 (Colo. 1994)), and so there is no need to specifically designate High Impact's claim as being "on behalf of" the Lees or that High Impact sues as the Lees' representative.  *Cf. Nunn*, 244 P.3d at 122-23 (holding that an assignee of a third-party bad faith breach of an insurance contract claim suffered actual harm based on a stipulated judgment entered against the insured in excess of the insured's policy limits even though the assignee agreed not to execute that judgment).

*Second*, State Farm argues "Plaintiff does not sue for 'entitlement to benefits owed directly to or on behalf of' the Lees under the Policy."  [#41 at 5]; *see also* [#48 at 7].  This is because the Lees are not entitled to any benefits under the Policy, as State Farm has paid all benefits.  *See* [#41 at 5; #48 at 7].  To the extent that State Farm is arguing that statutory bad faith damages are not a benefit of the insurance contract, this court respectfully agrees.  But the language of the Assignment not only assigns the "benefits" of the insurance contract but the "right of payment from the proceeds <u>of all claims against State Farm Fire and Casualty Company arising out of hail damage sustained by the insured property May 8, 2017 to HPACT.</u>"  [#41-3; #42-3 (emphasis added)].  A statutory bad faith claim is undisputedly a claim against Defendant that arises out of

hail damage to the Lees' property on May 8, 2017.  And it would be illogical to read this provision to assign Plaintiff the right to recovery of such damages but not the right to pursue them.

State Farm's argument further suggests that High Impact cannot maintain a statutory bad faith claim in the absence of a concurrent breach of contract claim.  I respectfully disagree.  Most notably, "a claim for breach of contract and a claim for unreasonable delay or denial of insurance benefits rely on two different sets of facts."  *Am. Family Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185 (Colo. 2018).  Indeed, "[Colo. Rev. Stat. § 10-3-1116] creates a right of action for the conduct described in § 10-3-1115, and describes the action as arising from the unreasonable delay or denial of claims, not simply payments due and owing."  *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1226 (10th Cir. 2016) (rejecting the notion that a statutory bad faith claim may only arise based on the delayed payment of funds the insurer agrees are owed under the insurance policy).  State Farm cites no authority, and the court is aware of none, that conditions a statutory bad faith claim on the existence of a breach of contract claim.

Further, "[t]he disjunctive 'or' [as used under Colo. Rev. Stat. § 10-3-1115(1)(b)(I)] indicates that the party asserting a claim for policy benefits may be a party other than the insured, so long as that party does so 'on behalf of an insured.'"  *Larson*, 305 P.3d at 412.  There is no requirement that any additional benefits be owed under the Policy before High Impact may assert its statutory bad faith claim against State Farm "on behalf of" the Lees.  High Impact need only prove that State Farm unreasonably delayed its tender of $375,856.43 to succeed on its statutory bad faith claim.  *See Sandoval*, 952 F.3d at 1236.  To accept State Farm's argument would allow an insurer to divest unilaterally an insured a right to pursue a statutory bad faith claim simply by paying the covered benefit at any time before the resolution of litigation—without regard to the insurer's diligence.

***Third***, and finally, State Farm argues the Construction Services contract and Assignment

Agreement do not authorize High Impact to sue State Farm for statutory bad faith. *See* [#41 at 5-

6; #48 at 8-10].   According to State Farm, neither Mr. Kurtt nor Mr. Lee intended for these

documents to authorize this civil action, and the Lees never intended to sue State Farm themselves.

While it may be true that the Lees will not benefit from this suit and had no intention to sue State

Farm themselves, this extrinsic evidence cannot modify or alter the unambiguous provisions in the

Construction Services contract or the Assignment Agreement.   *See Level 3 Commc'ns, LLC v.*

*Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008) ("When a contractual provision

unambiguously resolves the parties' dispute, the interpreting court's task is over.  It is axiomatic

that in the absence of an ambiguity a written contract cannot be varied by extrinsic evidence."

(quoting *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1314 (Colo. 1984))).

Moreover, the Assignment Agreement's purported silence as to litigation or statutory bad

faith claims does not bar High Impact from asserting such a claim here.  As explained, the Lees

unambiguously assigned their insurance claim to High Impact, High Impact sought payment of

funds from State Farm, and did so "on behalf of" the Lees, rendering High Impact a "first-party

claimant."  Having assigned away those rights in exchange for High Impact assuming the risk of

payment for repair already rendered on the Lees' roof, the Lees' intention is no longer relevant

considering the unequivocal language discussed above.  Because High Impact believed State Farm

unreasonably delayed payment of the benefits owed under the Policy, it rightfully brought a

statutory bad faith claim.  *See Sable Cove Condo. Ass'n v. Owners Ins. Co.*, No. 14-CV-00912-

MJW, 2014 WL 4398668, at *4 (D. Colo. Sept. 5, 2014) (concluding, consistent with *Larson*, that

an assignee could assert a statutory bad faith claim against the insurer, even in the absence of any

authority for the assignee to communicate with the insurer or a specific assignment of that statutory

bad faith claim).

Aside from proffering inadmissible extrinsic evidence that High Impact and the Lees had

intentions different than those unambiguously set forth in the Construction Services contract and

Assignment Agreement, State Farm advances no argument that either document is void, invalid,

and/or not binding.  Nor does State Farm argue that such claims are not assignable.[5]

Rather, the undisputed facts establish the Lees entered the Construction Services Contract

with Plaintiff on or about May 25, 2018, which obligated Plaintiff to perform a certain scope of

work on the Lees' property.  [#42-2 at 1].  In exchange, the Lees agreed to permit High Impact to

contact and negotiate with State Farm "to determine the causation, scope of work, Replacement

Cost Value, Supplements, and all other issues related to the work" and authorized State Farm to

include High Impact LLC on all checks for all work performed under the Construction Services

contract.  [*id.* at 2].  Then, on July 20, 2018, prior to any payment by State Farm of benefits due to

the Lees, the Lees entered the Assignment Agreement with Plaintiff whereby High Impact agreed

to pay the costs of reasonable repairs or replacement to the Lees' roof arising out of the May 8,

2017 hail storm, and the Lees agreed they would assign to High Impact the right of payment from

the proceeds of all claims against State Farm.  [#42-3].  Implicit in that conveyance is the right to

assert such claims against State Farm.

---

[5] Several courts in this District have so concluded, but they did so under a framework that concluded a claim under Colo. Rev. Stat. §§ 10-3-1115, -1116 was a claim for a penalty. *See, e.g.*, *Hernandez v. Am. Standard Ins. Co. of Wisconsin*, No. 11-CV-03076-RBJ, 2013 WL 6633392, at *5 (D. Colo. Dec. 16, 2013); *Rooftop Restoration, Inc. v. Ohio Sec. Ins. Co.*, No. 15-CV-00620-LTB-KTM, 2015 WL 9185679, at *4 (D. Colo. Dec. 17, 2015).  The Colorado Supreme Court has since held that such claims are not claims for penalties, calling into question these decisions.  *See Rooftop Restoration, Inc. v. Am. Family Mut. Ins. Co.*, 418 P.3d 1173, 1175 (Colo. 2018).  Because it was not raised by State Farm, this court does not pass on whether, in all instances, bad faith claims are assignable.

Notwithstanding that State Farm did not argue that statutory bad faith claims are not assignable, even after *Rooftop Restoration*, any policy concerns that this court might have are allayed, in these circumstances, by the fact that Plaintiff was actively engaged in the adjustment of the underlying insurance claim and assumed the risk of paying for the costs of reasonable repair and/or replacement even prior to the payment of benefits by State Farm.  High Impact is therefore not a mere bystander that now seeks to profit without assuming any risk.  Accordingly, this court concludes that State Farm has not carried its burden of establishing that it is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)     State Farm's Motion for Summary Judgment [#41] is **DENIED**;

(2)     Plaintiff's Rule 56(d) Motion [#43] is **DENIED as moot**;

(3)     State Farm's Motion to Supplement [#47] is **DENIED**;

(4)     State Farm's Motion to Strike Garrett Kurtt Affidavits [#50] is **DENIED**; and

(5)     State Farm's Motion to Strike Email [#51] is **DENIED**.

DATED:  June 11, 2020                    BY THE COURT:

Nina Y. Wang
United States Magistrate Judge